Vander Volgen *v.* Yates.

### VANDER VOLGEN *vs.* YATES.

The owner of a lot of land, in April, 1790, in consideration of £100, granted, bargained, and sold the same unto Y., V., and six other persons named therein, and to their heirs and assigns forever; to have and to hold the same to the grantees and their heirs and assigns forever, upon *trust*, for the benefit of D., V., and eleven other persons named in the indenture, members of St. George's Lodge of Freemasons, and all others who then were, or thereafter might become, members of such lodge, their survivors and successors forever, and for no other use, intent, or purpose whatsoever. All the parties of the second part named in this deed, except Y., and the whole of the thirteen persons specifically named therein as a part of the then members of the lodge, having died, and the lot having been taken by a rail-road company, for the use of their road, the damages were assessed, and the amount paid over to Y. as the surviving grantee in the deed. Upon a bill filed by the heirs of the grantor in the deed, against Y., to recover from him the moneys thus received, for the lot, from the rail-road company; *Held* that it was not the intention of the parties of the deed to vest either the whole legal title, or the whole beneficial interest in the premises, in the thirteen persons therein specifically named, as members of the lodge, during the terms of their respective lives, for their benefit and the benefit of the survivor of them exclusively. But that it was the intention of the parties that it should operate as a conveyance of the legal title of the whole fee of the lot, not for the benefit of the thirteen individuals named, for life, with a resulting use to the grantor, but for the aggregate body of the members who then constituted, or who should thereafter constitute, the St. George's Lodge.

*Held also*, that the members of the lodge could not, as a lodge or society of freemasons, take the legal estate in the premises, as an executed use, under the statute of uses; but that they could take a beneficial interest in the property, as a charitable use.

Vander Volgen *v.* Yates.

*Held further,* that the statute of uses, instead of vesting the legal estate in the thirteen persons named in the deed, for life, with remainder to the grantor as a resulting use, vested the whole legal estate in Y., V. and the six other grantees, and in the survivor of them, as trustees; in trust for the use and benefit of those who were, or who might thereafter become, members of the lodge, as a charitable use; that the legal title was in Y., the surviving trustee, at the time the damages were paid over to him; and that the complainants were not entitled to such damages.

It was not the intention of the framers of the statute of uses to defeat and destroy the beneficial interest of the cestui que use; but only to change his mere equitable interest in the use of the property into a legal estate, in the property itself, of the same quality and duration.

Accordingly, where the beneficial use cannot take effect as a legal estate, in the *cestui que use,* it will take effect as a trust, in the same manner as if the statute had not been passed; where it can take effect as a trust, consistently with the rules of law.

THIS was an appeal from a decree of the vice chancellor of the fifth circuit, dismissing the bill of the complainants. The bill was filed against J. C. Yates, and subsequently revived againt the defendant A. E. Yates, his executrix, to recover moneys received by the former for a lot of land taken by the Utica and Schenectady Rail-Road Company. There was no dispute as to the facts of the case; and the only question was as to the equitable rights of the complainants, to the fund in question, under the deed of Nicholas Vander Volgen to J. C. Yates and others hereafter mentioned. Previous to April, 1790, N. Vander Volgen, under whom the complainants claimed title to the reversion of the lot taken for the purposes of the rail-road, was the owner of such lot in fee. In 1790, and for a long time previous, there had been, and still is, a lodge or society of freemasons in Schenectady, called St. George's Lodge. On the 27th of April, 1790, by an indenture made between N. Vander Volgen of the first part, and Joseph C. Yates, Lawrence Vrooman and six other persons named therein, of the second part, the party of the first part, in consideration of £100, paid to him by them, granted, bargained and sold, aliened, released and confirmed to the parties of the second part, (in their actual possession then being by virtue of a lease of bargain and sale for one year) and to their heirs and assigns forever, the lot after-

wards taken for the purposes of the rail-road; with the heredit-aments and appurtenances, reversion and remainders, rents, issues and profits thereof, and all the interest and title of the party of the first part in or to the premises; to have and to hold the same to the parties of the second part and their heirs and assigns forever : upon *trust* nevertheless, to the only proper use, benefit and behoof of Cornelius Van Dyck, Lawrence Vrooman and eleven other persons named in the indenture, members of St. George's Lodge in the town of Schenectady, and all others who then were or thereafter might become members of such lodge, their survivors and successors forever, and to and for no other use, intent or purpose whatsoever. And Vander Volgen covenanted with the parties of the second part, their heirs and assigns, for further assurance for the uses and purposes then specified ; and also covenanted to warrant the premises to the parties of the second part and their heirs and assigns forever. All the parties of the second part named in this deed of bargain and sale and release, except Joseph C. Yates, were dead at the time the land was taken for the purposes of the rail-road. And the whole of the thirteen persons, specifically named in the con-veyance as a part of the then members of the lodge, were also dead at the time the lot was so taken for the use of the rail-road.

The following opinion was delivered by the vice chancellor :

P. GRIDLEY, V. C.  It is insisted by the complainants' coun-sel, that by force of this conveyance the whole legal and equi-table estate of the grantor, (excepting a reversionary interest claimed by this bill,) passed into the grantees, and through them to and became vested in the cestuis que use who were named in the deed, and them only ; and that this was only an estate for the joint lives of the persons so named, there being in the conveyance no operative words of perpetuity applicable to the use. The conveyance in this case was by lease and release ; or rather by bargain and sale for one year, which by force of the statute of uses transferred the possession to the grantees so as to enable them to take the fee, by means of a release. (*See* 2 *Bl. Com.* 338, 339 ; 4 *Kent's Com.* 494.)  If the position of

Vander Volgen *v.* Yates.

the complainants' counsel is correctly taken, that the legal as well as equitable estate passed instantly out of the grantees, and that the statute executed the use immediately in such of the cestuis que use only as were so named and described as to be able to take a legal estate, and that the other persons described as members and those to become members, &c. of St. George's Lodge took no interest, legal or equitable, it would doubtless follow that the reversionary interest in the premises would result to the grantor, or to those who represented him as to his real estate. The counsel has referred to many cases to show that neither the St. George's Lodge nor the members of it, nor their successors, are so described as to take a legal estate, and also that the grantor was capable of devising his reversionary interest. (4 *Com. Dig.* 355. 8 *John. Rep.* 301. *Co. Litt.* 3, *a.* 10 *Coke's Rep.* 266. *Shep. Touch.* 236, 237, 238, 417, 437. 4 *Cruise, Deed,* ch. 24, § 42. 4 *Kent's Com.* 25. 4 *Cowen,* 325. 9 *Ves.* 323. *Chitty's Dig.* 1288. 8 *John.* 422. 9 *Id.* 73. 6 *Conn.* 298. 4 *Wheat.* 1. 2 *Ves. & Beame,* 57, *n.* 6. 2 *Wash. C .C. Rep.* 441.)

It may be a question whether this conveyance, by lease and release, which together constitute but one conveyance, (4 *Kent,* 494,) should not be held to operate so as to vest the *legal estate* in the grantees named in the conveyance, upon the ground that being deemed for this purpose a deed of bargain and sale, the statute executes a use in the bargainees, the grantees, and therefore cannot execute a second use in the cestuis que use named; but will effectuate the intent of the parties by giving a trust estate to the cestuis que use. That such is the rule when applied to a conveyance which is an original deed of bargain and sale, is an elementary doctrine. (2 *Bl. Com.* 335, 6, 7, *and the cases there cited.*) The supreme court of this state, in *Jackson* v. *Cary,* (16 *John* 302, 304,) have applied this doctrine to a conveyance by lease and release; regarding it substantially a bargain and sale. And they held that the deeds of lease and release in that case were a bargain and sale. Ch. J. Spencer, in delivering the opinion of the court says: "The first objection to the deed from the Kips is that it is a deed of bargain and

sale, and that upon such a deed a use cannot be limited to any other person than the bargainee." He then quotes Saunders for the principle that no use can be limited to arise out of the estate of the bargainee to a *third person ;* for that would be to limit a use to arise upon a use. Therefore he adds, " if A. bargains and sells to C. to the use of A. (the bargainor) *or to any third person* for life or in fee, this limitation to the use is void," though he insists it would be good in equity as a trust. Now if this doctrine, which is undoubted law as applied to a bargain and sale, is applicable to the conveyance by bargain and sale and release conjoined, according to this decision, then there is an end of this case, for the legal estate vested in the grantees ; one of whom, the original defendant in this suit, was living when the bill was filed. I might, perhaps, repose myself upon this case alone, but I prefer not to do so, inasmuch as the authorities cited in the note appended to the case, and some others, seem to regard a lease and release as standing on differen: grounds from a mere bargain and sale, and to require the limitation of an use in such case to the grantees, &c. necessary to make the second use void as being limited on a previous use. (2 *Bl. Com.* 336, *n.* 11. 6 *Barn. & Cress.* 305. 3 *Coke Lit.* 271, *b, n.* 231. *Dyer,* 155. *Cro. Car.* 224. 2 *P. Wms.* 146.)

There are however grounds, independently of this, which convince me that the complainants have no equitable right to the relief sought. The claim of the complainants rests on establishing the proposition that the grantor, by the conveyance, parted with nothing but a life estate, to endure no longer than the life of the last survivor of the cestuis que use named in the deed, and that on his death the residue of the estate reverted to those who were entitled to this portion of his real estate. The reasoning by which this position is maintained is this, that the statute executed the use declared in the deed ; that none but the persons named are so described as to be able to take a legal estate, and therefore the whole estate conveyed vested in the persons named ; and that that was only a life estate, inasmuch as no apt words are used to designáte persons to receive the inheritance. The claim is not that the grantor did not use

apt words to convey the whole estate ; not that he did not receive a full consideration for the whole estate ; not that it was not the intent of all the contracting parties that the whole estate should be conveyed by the grantor, and that it should be enjoyed in perpetuity by the members of St. George's Lodge, but that the parties who were intended to take the beneficial use were so defectively and inartificially described, that by an inflexible rule of construction a life estate only was created. Let us examine, and see whether such is the inevitable result of the phraseology of the deed. This deed is a contract in which the grantor, the grantees, and those for whose use the property therein described was purchased, are interested ; and it is necessary therefore to see what rules of interpretation are to be applied to this instrument. The cardinal rule of construction is that the intention of the parties, as ascertained from the whole of the instrument, is to prevail. (3 *Cruise,* 415, *Deed, ch.* 23, §§ 1, 6.) That stress should not be laid on the strict meaning of words when the intent is clear. (*Id.* § 4.) That the construction ought to be on the entire deed, and not merely upon a particular part of it ; that the construction should be most strongly against the grantor. If a deed will bear two constructions, the one favorable to law and justice and the other against it, the former shall be preferred. (*Id.* §§ 6, 7.) Words are sometimes rejected and omissions supplied to effectuate the intent of the parties. (*Id.* §§ 11, 13, 15.) If a deed cannot operate in the manner intended, it shall be sustained to operate in another. By this rule a conveyance void as a lease shall be construed a grant. (*Id.* §§ 17, 18, 19, 20, 21.) In *Roe* v. *Tanner,* (2 *Wilson,* 77,) Lord Mansfield says the rules laid down for the construction of deeds are founded in law, reason, and common sense ; that they shall operate according to the intention of the parties, if by law they may, and if they cannot operate in one form they shall operate in that by which the law will effectuate the intention. An objection is made in this case, which, it is said, takes it out of the general rule and the doctrine of the authorities cited ; and that is, that in the release in question the word *grant* is not used. But that the intention

Vander Volgen v. Yates.

of the parties was to pass all the right and title of the plaintiff in the premises, is manifest beyond a doubt. Aston, justice, agreed with Lord Mansfield, though this doctrine was said to be opposed to some old authorities cited by Cruise. See also the whole of the opinion of Willes, C. J. in that case, which goes a great length for the doctrine of bending the rigid rules of verbal constructions to carry into effect what is seen to be the manifest intent of the parties. So too in *Petersdorff's Abridg-ment, (vol. 7, p. 687,)* there is a strong case to show how far courts have gone to give efficacy to the intent of the parties. (*Id.* 68, 69.) And when a deed may enure different ways, the grantee shall select which way to take it, and the construction shall be in favor of the party upon whom the benefit is to be conferred. (*Id.* 690.)

Now the construction contended for by the complainants will defeat the intention of the parties to this deed, and not only so, but will be in direct and irreconcilable hostility to its most solemn provisions and covenants. It, on its face, conveys the premises in question to the grantees and their assigns forever, together with the reversion and reversions, remainder and remainders, and also all the right, title, interest, &c. of the grantor in the same. To have and to hold the same to the grantees and their heirs forever. Now on the face of this it is contended that the reversion was not conveyed by the deed. The conveyance is upon trust to the only proper use, benefit and behoof of Cornelius Van Dyck, &c. and all others who at present are, or hereafter may become, members of St. George's Lodge in Schenectady, their survivors and successors forever. It was foreseen by the parties that the conveyance might be defective and not fully convey all the estate and interest intended, and therefore the grantor covenanted for himself, his heirs and assigns, to execute such further conveyances as might be necessary to effectuate the intent of the parties in relation to the uses and purpose before declared in the said deed. Now if, under the above rules of construction as applied to the different portions of this deed, there are found sufficient words of description and adequate parties to take the whole estate of the gran-

tor, then the whole estate should be held to have passed, and wherever else it may be, it is out of the grantor, and in that event the bill should be dismissed. Suppose that the clause in the deed providing for this trust expressed only the persons named, or one of the persons named therein, without any words of perpetuity; where then would be the legal estate? A life estate would be in the cestuis que use, executed by the statute. But where would be the residue of the estate—the reversion? Would it be in the grantor as a resulting use? Why should it result? Because the whole estate was not granted? No. Because there was no consideration paid by the grantee? No. Because there was no person to take? No. For the grant was to the grantees and their heirs, and for a full consideration paid by them. There is then no *necessity*, according to any rules applicable to cases of resulting uses, that the estate should revert, in opposition to the expressed intent of the parties. It is not like a grant to A. and his heirs for the use of A.; but it is a purchase, by the grantees, of the whole estate for adequate consideration, with a provision in the deed reserving a life estate to a third person, and belonging in law and equity to the grantees and their heirs after the termination of the life estate. Such seem to me to be the legal rights of the parties in the case supposed. And such is this case in law, if the complainant is right in excluding the other members and future members of the lodge from all legal and equitable interest in and to the premises conveyed by the deed. (*See Cornish on Uses*, 80, § 5.)

Again; if we suppose, with the complainant's counsel, that the whole estate that was conveyed passed through the grantees and vested in the cestuis que use who were named, does it follow that they took the estate as absolute owners, discharged of any trust? Why should they not be deemed to take the estate in trust for themselves and the other and future members of the lodge? Such was the obvious intent of the grant, and in that event the trust would not fail by the death of the trustee. Chancery would appoint a trustee to uphold the trust for the benefit of the cestuis que use. In *Jackson* v. *Cary*, (16 *John.* 302,) and in the cases there cited, and in numerous others, it is

seen that though a second use is void as a use, it will yet be upheld as a trust, to effectuate the intent of the parties. Here a use was declared for A. and B., and also for a class of persons described as members of a lodge. Now A. and B. take the legal estate, because the members of a lodge cannot take it. But they may be the objects of a beneficial trust. Why then should not the court, in analogy to the principle just referred to, carry out the intent of the parties by allowing A. & B. to take the legal estate in trust for themselves and the members of the lodge? But in my judgment the rights of the persons described as members and future members of St. George's Lodge may claim the protection of the court upon more independent grounds. I am of opinion that the provision in favor of the persons named as cestuis que use and the members of St. George's Lodge raised a trust for the whole and not a use for a part. It is laid down that the question whether parties shall take a trust estate, or a use executed by the statute, will depend on intention. (4 *Taunt.* 774. 3 *Co. Litt.* 290, *n.* 6.) And in ascertaining the intention, courts have looked to what was contemplated to be done with the premises conveyed, and if any duty was to be performed by the grantee, such as to dispose of the rents, &c. or of the lands, &c. in such a manner as to require the legal estate to reside in the trustee, it would be held a trust. Now apply that rule to the facts of this case. The intent was to give this land to the use of the members of the lodge, in perpetuity. That could not be done by conveying the legal estate unincumbered with the trust; for if there should be no trust the legal estate would vest in the grantees or cestuis que use absolutely. And a conveyance to the members, as such, would be void for uncertainty; and if to the St. George's Lodge, it would be void because there was no such corporation known to the law; and in either case, the whole intent of the purchase would be defeated. These are certainly cogent reasons why this provision should be declared a trust. Again: Here are not only the members named, but members living and not named, and others, to succeed the present ones. All equally interested and intended to enjoy the benefits of the

purchase.  Now shall this statute be declared to execute the use in a part of the persons to be benefited, when by regarding the provision as creating a trust instead of a use, the whole would be benefited, in accordance with the clear intention of all the parties?  Again: Shall the provision be declared a declaration of a use, instead of a trust, when such a construction will have the effect to divest the purchasers of an estate of inheritance, for which they have paid a full consideration, and which the grantor conveyed in terms?  In fine: Shall not this provision be declared to raise a trust instead of an use, when such a construction will carry into effect the general intention of the parties to the deed, and a contrary interpretation will defeat the whole object of the purchase?  I cannot avoid the conclusion that a court of equity should hold this a trust, and not an use, although if the provisions had been expressed to be in favor of the persons named and them only, the law might have required me to say that the use was executed, by the statute, in the grantees named as cestuis que use.

There is another consideration of much weight.  The covenant for further assurance provides for a possible defect in the conveyance, and the grantor and those who represent him may be compelled to perform it specifically.  (*Platt on Covenants*, 340, § 5.  *Id.* 353.)  It is then the equitable duty of the grantor, and the complainants who represent him here, to make all such further conveyances, on request, as will fully assure the whole estate, in accordance with the original and manifest intent of the parties.  The parties interested might say to the grantor, "You were paid the full consideration for the premises in question.  You, in terms, professed to convey the whole estate, reversion and all, to the grantees and their heirs, for certain uses.  It is true, the conveyance was defective, and by reason of such defects, it appears that only a life estate, instead of an estate of inheritance, was vested in the persons to whom the law gave the estate.  We have built upon the land and added to its value, and we fear our title may fail by reason of defects in the deed.  We now ask you to make the further assurance to effectuate the original intent."  What could the

grantor answer? I apprehend he could not give a denial which would receive the sanction of either a court of equity or his own conscience. I am of opinion, therefore, that there are equitable rights to this property in the defendant, or others standing behind him, which should bar the relief claimed by the complainants. I refer now to the case of *Jackson* v. *Brooks*, (8 *Wend.* 427,) where a deed very similar in its provisions was held to convey the legal estate to the grantee, in trust for the trustees and other inhabitants and freeholders of the town of Schenectady. The word *use* in the deed now under consideration has no artificial technical meaning, to distinguish it from the deed mentioned in the case of *Jackson* v. *Brooks ;* for the statute executes trusts, as well as uses. I have examined the statute, and many cases under it which disallow all distinctions of this kind. Though *Jackson* v. *Brooks* is not exactly in point, it is nevertheless a strong case against the narrow rule of construction contended for by the complainants, and in favor of a liberal construction of the phraseology of conveyances, to effectuate the intention of the parties.

On the whole, if any of the views which I have taken of this case are sustainable, then the complainants must fail. It is not necessary in this suit to decide with certainty who is the legal and who the equitable owner of this property. It is only necessary to be satisfied that the complainants have no right to it, to dispose of the suit. That being my opinion, for the reasons I have given, I have not examined the other questions in the case.

*Wm. Tracy,* for the appellants. The conveyance by bargain and sale for one year, and a release to the bargainee to an expressed use, to a third person, was a proper and authorized manner of raising an use. (4 *Cruise's Dig. tit.* 32, *Deed, ch.* 12, § 43. 4 *Black. Com. App. Har. & Butler's Co. Lit. note* 231, *p.* 271. *Bridg. Conv.* 110. *Cruise on Uses, p.* 66, §§ 94, 95. *Id. p.* 167. *Sugden's Gilb. on Uses, Lond. ed.* 1811, 229, *note. Shortridge* v. *Lamplugh,* 7 *Mod.* 76 ; *S. C. Ld. Raym.* 802. 2 *Salk.* 678, *pl.* 5. 2 *Saund. on Uses, pp.* 64 *to* 68.)

Vander Volgen v. Yates.

The only semblance of an authority opposed to the doctrine is found in the case of *Jackson, ex dem. White,* v. *Cary,* (16 *John.* 302,) quoted by the vice chancellor in his opinion. It is not entirely clear from the report whether the deed mentioned was not a simple bargain and sale of the reversion, after the term conveyed by the bargain and sale of the previous day. It is probable that it was. If it were not, it is very clear that the court fell into the error of confounding the then ordinary method (in 1790,) of conveying by bargain and sale for one year, and then a release of the reversion, with the simple conveyance by bargain and sale. The principle was a familiar one that on a bargain and sale no use to third persons could be limited, for the very obvious reason that the only estate the bargainee took, was the simple use, by virtue of his bargain, to which the statute transferred the possession. Before the statute, the bargainor still retained the seisin, and the bargainee the use; and as there could not be an use limited upon an use, then the bargain and sale could not be made to the bargainee to the use of a third person. And the statute did not alter this rule. The second use was void before and since, and the statute merely transferred the possession to the first use. Now to apply the law to our case. The bargain and sale for one year gave to the bargainees a lease for one year. That is, it gave them an use for one year, which the statute, by transferring the possession to the use, converted into an estate absolute for one year. They then held it absolutely, and as if they had it by a lease with livery of seisin. Then the release was given to them so seised for one year, to certain uses. This was a conveyance upon which the statute operated, and the possession of the reversion released was transferred to the use; the releasees taking to the use of the *cestuis que use* only. Not taking an estate for *themselves,* but simply taking the estate which was expressed by the use; so that it instantly passed through them to the *cestuis que use.*

The release to Robert Alexander and others, in the pleadings mentioned, simply conveyed through the releasees, *an use* which the statute executed into a legal estate to Cornelius

Van Dyck, and the other *cestuis que use,* named with sufficient certainty. This use was for their joint lives and the life of the survivor; and therefore the estate they thus took was an estate for their joint lives and the life of the survivor. The release was an ordinary conveyance to uses expressed, which since the statute of uses, has conveyed no interest or estate in the land to the releasees, *as* the statute instantly passed the seisin over from the releasees to the use expressed, and to the resulting use of such part of the estate as was not declared. (*Hargrave & Butler's Co. Lit. fol.* 271, *b. note* 231. 1 *Saunders on Uses,* 119.) Not being a corporation they could not have *successors;* nor could they take real estate as a community or society. (*Cooper* v. *Corey,* 8 *John. Rep.* 301.) It is a settled rule that a community not incorporated cannot purchase or take in succession. (*Jackson* v. *Hartwell, Id.* 424. *Co. Lit.* 8, *a. Com. Dig. Capacity, b.* 1. *Touchstone,* 237. *Hardenburgh* v. *Schoonmaker,* 2 *John.* 230. *Hornbeck* v. *Westbrook,* 9 *Id.* 73. *Green* v. *Dennis,* 8 *Conn. Rep.* 292. *Baptist Association* v. *Hart,* 4 *Wheat.* 1.) The cestuis specially named, and they alone were able to take the use expressed. Those persons, if any, who were described as "all others who then were, or thereafter might become members of St. George's Lodge," &c. were not capable by that description, and could take nothing by the release for the uncertainty. This is shown by the cases last referred to, and the following : *Touchstone,* 236, 509. *Gilb. on Uses,* 80. *Cruise on Uses,* 81 *to* 87. 1 *Mod. Ch.* 445. The doctrine runs through all the learning upon conveyances taking effect by the operation of the statute of uses, that since that statute, an use is subject to all the rules which before the statute were applicable to the conveyance of real estate; for the reason that the statute operates instantly upon the creation of the use, to carry the possession to the cestui, or as it is expressed, to execute the possession to the use, and thus to give him the seisin of the estate. So that the same requisites became necessary in the cestui that were before the statute necessary in the grantee ; and the same limitations and words of art to carry the use that were, requisite before the statute, in

conveyances at common law to carry a similar estate. There being some cestuis named who were capable to take by the description in the release, and others who were incapable for want of being described with certainty, as the "other members of St. George's Lodge," &c. those who were capable, or in other words, described with certainty, took the whole use which was expressed in the release, and the statute instantly executed in them a legal estate of the same extent as the use expressed. (*Touch.* 82, 237. *Viner's Abr. Grants, p.* 133, *pl.* 6. *Samme's case,* 13 *Coke,* 54. 1 *Saund. on Uses,* 135. 4 *Cruise's Dig. Deed, ch.* 20, § 8.) The use raised was only an use for the *lives* of the cestuis who took under the release, and the life of the survivor. There were no terms employed to pass the inheritance to the *cestuis que use.* (1 *Saund. on Uses,* 122, 123.) In the release in question, in expressing the use, there were no words of limitation which will pass the fee. The word *heirs* could alone do that; and the word successors, which it contains, does not supply the want of that word, for the cestuis named not being a corporation, could have no successors. (4 *Kent's Com.* 25. 4 *Cowen,* 328. 1 *Hil. Abr.* 37, § 3. 2 *Id. p.* 3, § 2. 1 *Inst. ch.* 1, § 1. *Vin. Abr. tit. Estate, p.* 235, *pl.* 9. 4 *Cruise's Dig. Deed, ch.* 19, §§ 62 *to* 65. *Id. ch.* 21, §§ 2, 3, 4.)

The use to the cestuis que use being for life only, the remainder of the use (i. e. the inheritance) resulted at once to the releasor, and by operation of the statute vested in him the reversion in fee, after the cestuis' life estate. (1 *Cruise's Dig. tit.* 9 *Use, ch.* 4, §§ 19, 20, 21 *to* 26, 32, 35. *Id. tit.* 12, *Trust, ch.* 1, § 54, 56. · *Shortridge* v. *Lamplugh,* 7 *Mod.* 76. *Lord Raym.* 798. *Lamplugh* v. *Shotterill,* 3 *Salk.* 387. 1 *Saund. on Uses,* 104. *Viner's Abr. Use,* 236. 4 *Com. Dig. tit. Franchises, F.* 6, *and note. Cro. Eliz.* 35. *Touch.* 509.) It is said by Cruise, (1 *Cruise's Dig. tit.* 9, *Use, ch.* 4, § 32,) that if any particular use is declared in a lease and release, the residue of the use will result back to the releasor. This is the present case. Here the releasor, Claus Vander Volgen, when he makes the release, is seised of the inheritance, after the ex-

piration of the term which he conveyed away by bargain and sale for one year. This was a reversion of the estate for one year. He releases to the releasees in trust to the only proper use, &c. of Cornelius Van Dyck, and the others named, and all others who now are, or hereafter may become, members, &c. "and to and for no other use, intent, and purpose whatsoever." Now this was a particular use which, as has been shown, was an use for life only, and the residue of the whole use is the reversion upon that life estate, that is, the inheritance, after that use or estate is carved out; which, by the doctrine above stated, resulted back to the releasor. The consideration expressed in the release is the measure of the value of the use granted, and the courts must so infer. (1 *Saund. on Uses*, 104.) That is, the courts may not say the consideration seems too large to suppose any use less than the whole estate was meant to be limited; for it was matter of contract between the releasor and the cestui que use, and they agreed upon a consideration for the use expressed in the deed. If the use in a deed is limited by its terms to an use for years or for life, and a consideration is expressed in the deed, that consideration was the measure of the value of that use, in the opinion of the parties. And, indeed, in our release there is nothing in the case, in or out of the deed, to show that the consideration expressed was intended as a price for the whole of the releasor's estate. If it were, why did the releasor expressly, in his release, limit the conveyance to the releasees "to and for no other use, intent, and purpose whatsoever" than to uphold the particular use expressed to the cestuis que use?

The resulting use was, by the operation of the statute, immediately upon its creation, an estate of inheritance in the releasor, and was a proper subject of grant or devise. Nothing but an estate for the lives of the cestuis who were particularly named had been conveyed. The resulting use was of all the rest, and of course of the inheritance. It was a reversion of all that remained over a life estate, and by operation of the statute was a legal estate of that extent. The releasees took no estate whatever by the release; as by the operation of the statute they

aie made the mere conduits of the title to the cestuis que use. (1 *Saund. on Uses*, 119. 2 *Cruise's Dig. tit.* 17, *Reversion*, § 2. *Id.* § 11.) It was a proper subject of devise. (*Touch.* 238, 417, 437. 6 *Cruise's Dig. tit.* 38, *Devise, ch.* 3, § 1.)

The complainants, by virtue of the several wills of Claus Vander Volgen and Petrus Vander Volgen, are representatives of Claus Vander Volgen, and are owners of the reversion of the premises, after the life estate of the cestuis que use. On the death of the last *cestui que use* named in the release the estate reverted, and became the sole property of the complainants; and they alone owned it at the time the rail-road company appropriated it. If the views of the law given above are correct, this will follow, that J. C. Yates received the money as trustee for the actual owners, and the complainants are entitled to receive it from his representative, the present defendant. This, as I suppose, makes out our case. I now proceed to examine the objections urged by the vice chancellor in his opinion, upon deciding the cause when heard before him.

The vice chancellor erred in the position that it might be questionable whether an use to a third person could be upheld upon a release given on a bargain and sale for one year. This point is disposed of by the authorities referred to and quoted under the first point of this argument. He also erred in his supposition of the manner and nature of the complainant's claim, as stated in his opinion. Instead of his suppositions, we claim that the releasor did not use apt words to pass an use of the whole estate to the cestuis; that he used no words to pass to the cestuis more than a life estate; and that thus conveying a use to them for lives, all the remainder of the use, to wit, the inheritance, resulted back to the releasor, and by virtue of the statute, was executed in him a legal estate of that extent; that the releasor did not receive a consideration for the whole estate, but only for the use declared. (*See* 1 *Saund. on Uses*, 104.) That it was not the intent of the parties to the release that the whole estate should pass out of Nicholas Vander Volgen; but that it was simply to pass so much as was measured by the use expressed; and to pass that, not to the releasees, but to the ces-

tuis que use, and so that they should hold it as a legal estate. That it was not the intent of the parties that the estate should be enjoyed in perpetuity by the members of St. George's Lodge; and that if it were, then by the terms and legal effect of the indenture, this intent cannot take effect, and the case would be the common one of a conveyance upon a particular trust only, which, by accident or otherwise, cannot take effect; in which case the trusts result to the original owner. (1 *Cruise's Dig.* tit. 12 *Trust, ch.* 1, § 56.)

The vice chancellor erred in his construction of the various rules laid down by Cruise, and their application to the case in hand. He says, "the cardinal rule of interpretation is that the intention of the parties, as ascertained from the whole of the instrument, is to prevail." The passage in Cruise is as follows: "The construction ought to be made on the entire deed, and not merely on any particular part of it. *Ex antecedentibus et consequentibus fit optima interpretatio.* Therefore, every part of a deed ought, if possible, to take effect, and every word to operate." (3 *Cruise's Dig. tit.* 32 *Deed, ch.* 19, § 6.) This rule is intended to apply in cases such as that of *Roe* v. *Tanner,* (2 *Wilson,* 77,) *Jackson* v. *Blodget,* (16 *John.* 172,) and various other similar cases; where the question is to determine from the language of the deed, first, what did the grantor mean to convey; and secondly, did he then use apt words to do it, according to the rules of the law. It was never intended that the court should merely guess what the grantor may have intended, and then twist the absolute force of the words he employed, against the rules of law, to effectuate such supposed intention. Cruise says, every part of a deed ought, if possible, to take effect, &c. He does not say that a part of a deed, which by the rules of law has no meaning, shall be made to supply the place of terms which alone of all language can create a fee simple. Indeed, in the same chapter, section two, he says, the maxim is that all deeds shall be construed favorably and as near the apparent intention of the parties as possible, consistent with the rules of law. If, however, the intention of the parties be contrary to the rules of law, it will

then be otherwise; for it would be highly improper and incon-
venient to permit private persons to contradict the general rules
of law.    Thus, if a person conveys land to another, and his
heirs, for twenty-one years, the executor of the grantee, and not
his heir, will be entitled to the land; because it is a rule of law
that a term for years is but a chattel real, which goes to the ex-
ecutor.  (*Id.* § 3.)   It will be observed from the illustration
given in this section, that Cruise does not mean by an "inten-
tion contrary to the rules of law" an illegal intention in the
grantor, but simply that when in a deed it appears to have
been the intention of the grantor to convey land to particular
persons, and he uses terms or a manner of doing it, which is
not according to the rules of law, the deed shall not be construed
according to this apparent intention, but shall take effect accor-
ding to the rules of law; and this notwithstanding that inten-
tion was entirely proper, and might have been carried into effect
by the use of apt words.   For it would have been perfectly
easy for him, and entirely consistent with the rules of law, to
have conveyed to the grantee an estate for twenty-one years in
case he should live so long, and to cease upon his death, with
remainder in case of his death previous to the expiration of
such twenty-one years to his heirs for the unexpired portion of
such twenty-one years.   And then his apparent intention would
have been the same as in the case in the text, and the inten-
tion would not have been contrary to the rules of law.   The
vice chancellor says, that "stress should not be laid on the strict
meaning of words when the intent is clear."   The passage in
Cruise is that "where the intention is clear, too minute a stress
ought not to be laid on the strict and precise meaning of
words."   This is applicable in such cases as those where a
deed is intended and made to pass property in one way.   It
may, that way being impracticable, be made to pass by some
other that is conformable to the rules of law.   The case of a
deed intended for a release, taking effect as a grant; as a re-
lease of a rent charge, or a corporeal hereditament. (*See*
*Touchstone*, 82.)   Again, the vice chancellor says: "If a deed
will bear two constructions, the one favorable to law and jus

Vander Volgen *v.* Yates.

tice, and the other against, the former shall be preferred." The
passage in Cruise is, "If the words of a deed will bear two
different senses, the one conformable to law and the other,
against it ; that sense shall be preferred which is conformable
to law," &c. (3 *Cruise's Dig. tit.* 32 *Deed, ch.* 19, § 18.) The
doctrine is just this. If the deed, on its face, bears an interpre-
tation perfectly consistent with the rules of law, and may also,
indicate that the grantor had some intention which could not,
according to the rules of law, be carried into effect by the terms
he employed, the law will carry into effect the interpretation
which is consistent with the rules of law. Let us apply the
doctrine upon the vice chancellor's supposition of the case in
hand. On the face of the deed he supposes there is an appa-
rent intention to convey to the cestuis an estate in fee simple.
Now by his deed he has used terms· which by the rules of law
convey to them a life estate, and no more. The words of the
deed, then, bear one sense conformable to law, which is to pass
only a life estate to the cestuis que use. But the vice chancel-
lor supposes the intention was to pass all of the grantor's estate
*out of him.* Now, the words of the deed, if this is the suppo-
sition, will bear a sense to create an estate in fee simple, with-
out the use of·the very terms which by the rules of law can
alone create a fee simple, to wit, the term heirs. That is, they
will bear a sense not conformable to law ; and in this case our
author says the sense shall be preferred which is conformable to
law. The vice chancellor observes that words are sometimes·
rejected, and omissions supplied, to effectuate the intent of the
parties. The passage in Cruise is, "where there are any,
words in a deed that evidently appear repugnant to the other
parts of it, and to the general intention of the parties, they will
be rejected as insensible," &c. (3 *Cruise, tit.* 32, *ch.* 19, § 25.)
By no means that words are rejected or supplied to effectuate
what the court might guess was the general intention of the gran-
tor. As to the omissions being supplied, an evident omission
or mistake will be supplied in a deed. Thus, where the name
of the bargainor was omitted in the operative part of a bargain
and sale, it was supplied. (*Id.* § 29.) But no one ever heard·

that the word heirs, the efficient, and only efficient term of limitation, was ever thought to have been omitted by mistake, and supplied.   The vice chancellor again says, "If a deed cannot operate in the manner intended, it shall be sustained to operate in another," &c.   The passage in Cruise is, "Where a deed cannot operate in the way intended by the parties, it will be construed in such a manner, as to operate, if possible, in some other way.   *Quando quod ago non valet ut ago, valeat quantum valere potest,"* &c.   (*Id.* § 33.)   And in the succeeding sections cases are given illustrating the rule.   The rule is not that when a deed will not by the rules of law carry into effect the apparent intention, the court will so construe it as to make it carry such intention into effect in some other way, by overriding the rules of law.   But it is that where the apparent and obvious intention cannot be carried into effect in the precise manner the parties intended, nevertheless, if the terms of the deed permit the intention to be carried into effect, consistently with the rules of law, in some other manner, the court will construe the deed in that manner.   As in the case of a lease and release which could not operate as such, but which contained a grant and assignment, by which the estate intended to be released could pass, the court held it to pass the estate as a grant and assignment.

Again ; the vice chancellor erred in his application of the case of *Roe* v. *Tanner*, and Lord Mansfield's remarks in that case.   The case of *Roe* v. *Tanner*, (2 *Wilson*, 77,) does not sanction any bending of the rigid rules of verbal construction, to carry into effect what is seen to be the manifest intent of the parties.   There was no bending of any rule in that case.   To give the legal effect to the language employed was all the court did.   I. Kirby had made a lease to Christopher Kirby for one year, and then released as follows: "Doth grant, release and confirm unto Christopher Kirby after the death of the said Thomas Kirby, &c. with remainder to Wilkinson [the lessor of the plaintiff] in fee tail ;" with a covenant that the lessee [Chr. Kirby] should have the use, &c.   And there was a consideration of £100 expressed in the release.   The question was merely

whether the releasee could take the release and grant, it being of an estate tail to commence *in futuro*. It was clear that he could not take by a release or grant an estate of that description to commence on the determination of a contingency. And it was contended by the plaintiff's counsel that the release should be sustained as a covenant to stand seised to uses; because 1. There was a proper consideration, £100 actually paid ; 2. A deed ; 3. The covenantor, the releasor, was seised in fee ; 4. There were apt words ; and 5. There was a manifest and plain intent. Willes, C. J. said, " We are all of opinion it shall take effect as a covenant to stand seised." Secondly, here are apt words, viz. a covenant that the grantor has power to grant, and a covenant that all fines, recoveries, &c. of the lands shall enure to the uses in the deed. Fourthly, there appears a most plain intent that Wilkinson (the lessor ) should have the lands in case Christopher Kirby died, in fee, and lastly consideration of blood. Lastly, he said the whole court were of opinion that a man could covenant to stand seised to use of another after the covenantor's death. He said the strongest cases for the defendant were in 1 *Sid.* 25, and 2 *Vent.* 318 ; that he did not understand them, and had he sat in judgment he should have been of a different opinion in both. Now here the case was a very plain one. It was manifest that the grantor wished to give an estate tail to commence *in futuro*. Why ? Because he released and granted an estate in that form. But the releasee could not take by that form of conveyance such an estate. And the grantor foresaw that that might be held to be the law, and he therefore inserted a covenant to stand seised after his death to the use of the lessee and remainderman. The court simply held that this *last provision* was conformable to law, and therefore decided, that though the deed could not operate in the way intended by the parties, yet as it was possible for it to operate in another way, it so construed it ; and regarded it as a covenant to stand seised, because it had all the requisites of one ; instead of a release or grant. The case of *Cholmondeley* v. *Clinton,* (7 *Petersd. Abr.* 687,) also·referred to by the vice chancellor, affords no example of any bending of the rules of

law to effectuate the intention of the grantor. The case of *Gregory* v. *Henderson*, (4 *Taunt.* 772, 774,) also referred to by the vice chancellor in support of his views, is simply a case turning on the distinction between an use executed by the statute and an executory trust. Neither of these cases appear in the slightest degree to support the vice chancellor's views. No rule of law was bent to carry out the supposed intention of the grantor. In the case of *Roe* v. *Tanner*, the deed, besides being a release and grant, was a covenant to stand seised. And the court merely held that that covenant should be carried into effect, while the other parts of the deed were inoperative. In *Cholmondeley* v. *Clinton*, no rule of law was bent, even by the two judicial officers who held that the deed should be construed to uphold the declared intention, as they took into view an element not considered by the others. And yet in that case three judges held that the declared intention could not be carried into effect. In *Gregory* v. *Henderson*, the courts merely decided upon the rule which, in all the cases, distinguishes between executory trusts and uses executed by the statute, to wit, if there is any thing for the trustees to do, the trust is executory, and the cestui does not take a legal estate. If otherwise, the statute executes the possession to the use.

The vice chancellor also erred in his general conclusion that the construction contended for by the complainants would defeat the intention of the parties to the deed, and be in hostility to its provisions and covenants. He errs in assuming that the intention of the parties to the release was to pass all the estate out of the releasor, and that that intention must be effectuated by the court. Now there is nothing in the release to indicate such an intention. It is worthy of remark that the instrument was one operating by the common law and statute of uses combined, and was such an one as was in common use in this state, at the time, to convey legal estates; and that it was the accustomed method of conveying legal estates up to within two years of its date. (4 *Kent's Com.* 494, *ed. of* 1832.) By such a deed it was well understood that the only estate which passed out of the releasor was the use expressed, which

Vander Volgen v. Yates.

by virtue of the statute was executed in the cestuis, *a legal estate*, of the same extent, and that the releasees took nothing. (*See* 1 *Saunders*, 119.) There is then no evidence, on the face of the deed, of an intention to pass any greater estate out of the grantor than the uses expressed, and the releasor expressly declares and provides in the release, that the releasees shall hold the premises to and for no other use, intent and purpose whatsoever than the uses expressed. Again; the intention of a party to a deed is to be gathered by the court solely from the terms he employs. If he employs technical terms, he is supposed to know their force and meaning, even in the case of a will. (6 *Cruise's Dig. tit.* 38 *Devises, ch.* 9, § 6.) If he omits terms which are necessary to pass a fee, it is presumed that it was not his intention to pass a fee. If he conveys to two, one capable and the other incapable, it is presumed that it was his intention to give to the one capable. This is a familiar principle. (4 *Cruise's Dig. Title Deed, ch.* 19, § 3. *Co. Litt.* 271, *b, note* 231, *by Buller.*) The principle is common to both courts of law and courts of equity. The same rules of interpretation and construction apply, to conveyances of land, in both courts. A court of equity may correct mistakes in a deed, when properly applied to for the purpose; but in the construction of the terms and words of a deed, it is governed by the same rules as courts of law. It determines what is the legal effect of the instrument, and nothing more. (1 *Mad. Ch. Pr.* 452, 552, 574.) The vice chancellor erred in this position, that the release on its face conveyed the premises in question to the grantees and their heirs forever, together with the reversion, &c. and all the right, title, interest, &c. of the grantor in the same, to have and to hold to the grantees and their heirs forever. By a strange mistake, the vice chancellor overlooks the remainder of the sentence in the habendum. In the release it is as follows, "to have and to hold to the parties of the second part, their heirs and assigns forever, upon trust nevertheless to the only proper use, benefit, and behoof of Cornelius Van Dyck, and the others named, &c. and the future members, &c. and to and for no other use, intent and purpose

Vander Volgen v. Yates.

whatsoever." Now such a deed in fact conveys no estate what, ever to the releasees. It is on its face an artificial, technical instrument, drawn by a conveyancer who understood the nature and effect of the statute of uses, and who understood the manner of conveying by lease and release to uses through the aid of the statute ; for he refers to the former deed of bargain and sale for one year, as giving possession by virtue of that statute. Now in the view of such a person the release conveys no estate to the releasees. So far as they are concerned, the release is precisely such an one as it would have been had the conveyancer been instructed to convey to Cornelius Van Dyck, alone, an estate for life, leaving the inheritance in the releasor untouched. The seisin of the persons seised to the use must have been sufficient to serve the use declared to the cestuis. This was always necessary, or the use might fail. So then, when the intention was to convey to the cestui a life estate, the practice was to convey in terms to the nominal grantee, the fee; then to declare the use to the cestui for life, and let the residue of the use, i. e. the inheritance, result by implication to the grantor. Then the statute executed the use for life to the cestui, and the remainder, that is the reversion, to the grantor. The effect was that the cestui got a legal estate for life, and the grantor retained the reversion ; but the grantee took nothing. (See 1 Saund. on Uses, 119 ; Co. Litt. fol. 271, n. 231 by Hargrave & Butler.) Again. The vice chancellor lays stress upon the fact that the releasor released to the grantees the estate, together with the reversion and reversions, &c. But this was necessary to pass any estate to be executed in the cestuis. At the time of making the release, all the estate of the releasor was the reversion after the estate for one year which was in the releasees by virtue of the bargain and sale. He had nothing but this to release. And the release of that reversion to the releasees, upon the trust to uphold a certain use declared upon it, with the express declaration that the conveyance was not to the releasees for any other use or purpose whatsoever, could never be construed to be a conveyance to the releasees of all the residue of the estate after that use was completed. The

plain import of the deed is, "I convey to you in trust that you may give a lease for life to the cestui que use, but for no other purpose, and I give you no more than just enough to convey such a life estate." There was no conveyance of any rever-sionary use. He also erred in his inference drawn from his observation that the conveyance was to Van Dyck and others, and those who were, &c. their survivors and successors forever. He places stress upon the word *forever*. Now this term was never held in a deed to create a fee simple. It is a most com-mon doctrine that a deed to a man to hold to him forever only gives him a life estate. Nor does the word successors help the matter, or aid to create a fee simple, as I have already shown. Suppose the use had simply been to Cornelius Van Dyck and the other cestuis named forever, could they, on any principle, take more than a life estate ? Now the effect of the deed is the same as if it had been so, for the words, members of St. George's Lodge, added to their names, were only words of description, and they could have no successors.

The vice chancellor also erred in the conclusions he draws from the cases put by him by way of illustration. He says : " Suppose the clause in the deed providing for the use express-ed only the persons named, without any words of perpetuity, where would be the legal estate ; the residue after the cestuis' life estate ? Would it be in the grantor as a resulting use ? Why should it result ? Because the whole estate was not granted ? No !" By the doctrine every where laid down in relation to conveyances operating by the statute of uses, the legal estate, the residue after the cestuis' life estate, would be in the grantor as a resulting use executed by the statute. And the reason why it should result would be that the use of only a life estate was ever disposed of. And I have shown that the releasees took nothing by the release. The releasees' estate for one year was merely enlarged to uphold the uses, and for no other purpose, and the use expressed exhausted the considera-tion in the release, as has been shown. The residue of the use, for all the reasons given under the third point, resulted to the releasor, and was, by operation of the statute, vested in him *eo*

*instanti* as a legal estate. The vice chancellor continues—
"Because there was no person to take? No! for the grant
was to the grantees and their heirs forever, and for a full con
sideration!" The answer is an obvious one. The grant was
to the grantees and their heirs, for the particular purpose of up-
holding the use ; and it was expressly declared that it was to
and for no other use, intent and purpose whatsoever. They took
nothing at all by the release, and had no interest in the estate.
(1 *Saund. on Uses*, 119.) As to the estate of the grantee. It
is obvious that as the statute has made the estate of *cestuis que
use* legal instead of equitable, and entirely divested feoffees,
releasees, &c. of all estate whatever, most of the incidents which
attended the use in its fiduciary state are now at an end.
With respect to the feoffee, he has no interest at all in the land.
It could never have been intended that the releasees should
take any thing by the release. It was only meant that they
should be the *conduit* through which to pass a legal estate to
the cestuis, of the same nature and extent as the use declared.

The vice chancellor erred in the following conclusions from
his train of reasoning : That there was no necessity, according
to any rules applicable to cases of resulting uses, that the estate
should revert, in opposition to the expressed intent of the parties ;
and that it was a purchase by the grantees of the whole estate
for adequate consideration, with a provision in the deed reserv-
ing a life estate to a third person, and belonging, in law and
equity, to the grantees and their heirs after the termination of
the life estate. In the first place, there is no expressed intent
of the parties that the use should not result. The only ex-
pressed intention in the release is that the releasees should take
sufficient seisin to uphold the use to the cestuis, and that they
should not take any estate in the premises for any other use,
intent, and purpose whatsoever. In the second place, I have
shown by the note on Coke Littleton, above referred to, that if
there had been an intention to grant the cestuis an estate in
fee, that cannot be made to ride over the legal effect of the
terms employed, or supply the omission of terms absolutely ne-
cessary to pass a fee simple. The inflexible rule of interpreta-

· tion as to the estate granted, before shown, is followed as well by courts of equity as those of law. (*Bagshaw* v. *Spencer*, 2 *Atk.* 574. 1 *Mad. Ch. Pr.* 452, 558.) As to the vice chancellor's second conclusion, that by the force of the conveyance the releasees took the whole estate subject to the life estate to the cestuis, it is at war with the whole doctrine of uses created for less than the whole estate, and the doctrine of resulting uses. There is not a case in the books to uphold the notion, that a deed which conveys to grantees an estate in fee on trust to a certain use for life, and with the express provision that it is intended for no other use, intent, or purpose than such declared use, ever did, since the statute of uses, convey any estate to the grantees, or that the use of the inheritance did not result to the grantor. There is no analogy between such a deed and a deed containing a reservation or exception. As has been shown, since the statute, the grantees take nothing in the land. Mr. Saunders thinks they may possibly be entitled to the deed, as the statute only draws the legal estate to the use, and says nothing of the muniments of title. (1 *Saund. on Uses*, 119.) The vice chancellor's reference to *Cornish on Uses*, (p. 69,) does not sustain his position. The passage referred to is a full examination of the doctrine of resulting uses, and the broad principle of all the other writers is laid down as fundamental, that " so much of the use as the grantor does not dispose of remains in him."

The vice chancellor erred in the position that if the estate passed through the grantees and vested in the cestuis, they took it in trust for themselves and the future members of the lodge, and they dying, the chancellor will supply trustees. If the only estate which was carved out by the expressed use of the releasor, was an estate for life to the cestuis who were sufficiently named, then on their death the estate is ended, and the inheritance reverts to the representatives of the releasor. No instance is to be found in the history of conveyances operating either at common law or by the statute of uses, where, when an estate or use was conveyed to two persons, one capable and one incapable, the capable should be held to take in

trust for himself and the non-capable. The rule in such cases as above stated is inflexible. The authorities there cited show this. (*Touchstone*, 82, 237. 1 *Saund. on Uses*, 135. *Cruise, Deed*, ch. 20, § 8. *Viner's Abr. Grants*, 133, *pl.* 6.) There is a class of cases where, since the statute, an use upon an use which cannot be upheld as such, is upheld as a chancery trust. As where A. bargains and sells to B. to the use of C. ; or where A. covenants to stand seised to the use of B. for the use of C. Now at common law, before the statute, the second use would have been void as an use upon an use. And so the courts still hold. For the only seisin which B. would have to uphold the use to C. would be the use given him executed by the statute. So they hold that the statute executes the use which was good at common law, and that the void use is still void. Nevertheless the court of chancery, by a practice which has been a good deal complained of, but which has become thoroughly established as law, have got round the difficulty by regarding the second use as an executory trust, and thus by subpœna compelling the first cestui whose estate had been rendered a legal one by the operation of the statute, to hold as a trustee for the second use. (*See* 2 *Black. Com.* 335, *Chitty's note* 60, *and the cases there referred to.*) This is the only case where a cestui que use is held to be a trustee. No case can be found where, in a grant to two grantees, one capable and one incapable, the capable takes in trust for himself and his incapable co-grantee. In the present case the release is to the use of twelve capable persons, and sundry others who might or might not be in existence—who were unknown to the law—and were incapable to take as they were described in the release. The capables therefore took all the use expressed. Again ; the use expressed was so expressed that no estate of inheritance passed. It was therefore an use for life only, as has been already shown. I have remarked that the release in this case was such an one as, at the time it was made, was in common use to convey legal estates. (4 *Kent's Com.* 494, *ed. of* 1832.) And it appears by the statute for the prevention of frauds, passed in 1787, (1 *Greenleaf's Laws of N. Y.* 385, § 3,) that the doctrine of

resulting uses was recognized and preserved. That was but three years prior to the date of the release. It must therefore be presumed that the conveyancer drew the release for the purpose of transferring a legal estate. Most certainly the notion that there is any thing in this conveyance to take it out of the ordinary class of deeds operating by force of the common law combined with that of the statute of uses—well understood at the time the conveyance was made—and to render it the instrument of creating a new and anomalous trust is without a semblance of authority or analogy.

The vice chancellor erred in his construction of the rule that the question whether parties shall take a trust estate, or an use executed by the statute, will depend on intention, and in ascertaining the intention courts have looked to what was contemplated to be done, &c.; and also in its application. The intention which courts look into the deed to ascertain, in order to determine whether an executory trust is created, or an use is executed by the statute, is confined to this point—What did the grantor contemplate was to be done by the grantee with the premises? It is the legal effect of the terms employed. If the instrument simply gives the estate to A. in trust for B., without any further provisions; or to A., in confidence that he should hold it for B.; in these and all such cases, where nothing is to be done with the premises by A. but to hold it for B., the statute executes the possession to the use, and creates the legal estate in B. If it convey to A. with directions to manage or dispose of the estate, or the rents, for the benefit of B. in such a manner as to require A. *to do any thing* in order to carry into effect the direction in the trust clause, there the statute does not operate, and the estate is in A., as a chancery or executory trust. And the reason is given by all the writers; that in this case it is necessary that the legal estate should remain in him, to enable him to perform his duty under the trust. The broad distinction is this: If there is any thing for the trustees to do, requiring them to have the power of controlling or exercising acts connected with the possession of the legal estate, then it is a chancery trust. If there is nothing for the trustee to do, it is an use

executed by the statute. (1 *Mad. Ch. Pr.* 448 *to* 450. *Coke Lit.* 290, *Butler's note* 249, § 504.) It is sometimes doubtful whether an estate be legal or equitable. The result of the cases seems to be, 1st. That a devise to A. and his heirs in trust for B. and his heirs, without any ulterior words, is an use executed by the statute in B., and so also would be a devise to A. and his heirs in trust to permit B. and his heirs to receive the rents and profits. 2d. That a devise to A. and his heirs with directions to dispose of the estate, or of the rents, in such a manner as necessarily requires the legal estate should reside in him, will of course vest the legal estate in him. (*Id.* 2 *Bl. Com.* 335, *Chitty's note* 60. *Id.* 336, *Christian's note* 62. 21 *Wend.* 147.) By the release in this case there was nothing for the releasees to do. The intention was simply that they should be the conduit of an estate to the cestuis. The conveyance was expressly, and in terms, upon trust to the use of the cestuis, and to and for no other use, whatsoever. And it would have made no difference, in its effect, if it had, by any other form of words, expressed that the releasees should hold it for the cestuis named ; so long as there was nothing for them to do as trustees. For the statute of uses executes the use in all such cases. Its language is, "Where any person or persons stand or be seised, &c. to the *use, confidence* or *trust* of any other person or persons," &c. And besides these particular words, use, confidence and trust, the word intent will raise an use to be executed ; as a feoffment in fee, *ea conditione*, that a third person should have, &c. (1 *Saund. Uses,* 98.) And all such uses, confidences and trusts were executed by the statute, and becoming thus legal estates, the incidents necessary in the conveyance of legal estates are all necessary in the transmission of uses. (1 *Saund. Uses,* 122 *Touch.* 509. 2 *Hill. Abr.* 341, § 51. 1 *Id.* 196, § 9. 1 *Cruise, tit.* 12 *Trust, ch.* 1, § 86. *Broughton* v. *Langley,* 2 *Ld. Raym* 877.)

In no case where there is a technical artificial conveyance of an estate, employing terms of ar having a fixed, certain and well known legal effect, will the court speculate and guess out an intention adverse to or inconsistent with he legal effect of

the deed. (1 *Mad. Ch. Pr.* 554.) As to the releasor's intention here : When he declares in his deed that he had by bargain and sale conveyed an estate for one year, and that by virtue of the operation of the statute of uses that had become converted into a legal estate for that term, and when he goes on and by the strictest technical language conveys another use to the cestuis, is it possible that all parties did not intend that the statute should operate upon that use and convert that also into a legal estate ? There is nothing, as the vice chancellor supposes, to show the use was intended for St. George's Lodge. The words *members of St. George's Lodge* following the names of the cestuis named, were merely descriptive of their persons. It was never heard that a conveyance to A., B. and C., members of a particular church, or society or corporation, was a grant to the society, or corporation. A grant to fifty persons, naming each, with the words being all the members of a particular society named, would be a grant to them as individuals. There is nothing in our release to indicate that the use was for the benefit of the lodge in any event. The courts have no power to bend a conveyance from the obvious and well settled legal effect of the language employed. (1 *Cruise, tit.* 12 *Trust, ch.* 2, § 2. 1 *Mad. Ch. Pr.* 452. *Com. Dig. Uses,* 992.) It may indeed be, in some cases, a hardship that the churchwardens of Dale, the inhabitants of Otsego county, or the inhabitants of the town of Rochester cannot take by those names. But the law intended for the benefit of the greatest number is so ; and it was never heard that a new sort of trusts should be framed to get around it. Nor can the court guess at an intention, other than such as the legal construction of the instrument warrants. The intention is the legal interpretation of the terms employed. (*Toth.* 153.)

The vice chancellor erred in the conclusion that the covenant for further assurance placed the complainants, as representatives of the releasor, under obligation to make conveyances of the fee simple to the releasees, or the cestuis, or to the lodge. The covenant in question is, in terms, to make new and further conveyances when necessary, for the further, better and more

Vander Volgen *v.* Yates.

perfect granting, conveying and assuring of all and singular the said premises above mentioned, with the appurtenances, unto the said party of the second part, their heirs and assigns, to and for the uses and purposes hereinbefore specified and more particularly mentioned. The covenant of warranty has the same qualification. And the estate released was qualified in the same way. The covenants, then, were merely to make further conveyances to uphold the use, and to warrant the use, and nothing more. And the covenants, in no manner, determine what that estate was. They refer to the habendum, the use declared, exclusively; and without that, their extent cannot be ascertained. If the use was for years, the covenants are to make assurances to uphold and warrant such an estate. If for life, an estate for life. But they are not to make deeds to convey a fee when the use was of a less estate. Again, covenants in a deed do not enlarge an estate, nor in any manner affect its extent. (*Touchstone,* 106, 182, 197.) If, as the vice chancellor proposes, the *cestuis que use* should demand further conveyances under the covenant, the answer would be, no conveyances are now necessary to uphold the use expressed. You have enjoyed that, and it is now ended; we only covenanted to secure that to you. If the releasees should demand further conveyances, the reply is, the land was only conveyed to you in terms to the use expressed; you were the mere conduits of the title, and never had any interest in it. You have had all the title necessary to uphold the uses expressed. If either should, as the vice chancellor proposes, tell us, you had a full consideration paid you for the premises, and professed to convey the whole, the reply is, the only consideration paid was for the use expressed. This is the legal, and the only legal presumption. And it is a mistake to suppose the conveyance professed to convey the whole. It expressly limited the estate conveyed to the use expressed. The vice chancellor then refers to the case of *Jackson* v. *Brooks,* (8 *Wend.* 427,) where he says a deed very similar in its provisions was held to convey the legal estate of the grantor in trust for the trustees and other inhabitants and freeholders of the town of Schenectady. He

is mistaken in the fact. In the case of *Jackson* v. *Brooks* there was no question raised as to the effect of the conveyances made with the trust clause. The questions there were, whether one to whom both parties traced their claim of title, had or had not disposed of it. And it may be remarked of the facts in that case, that upon the strictest rules of uses executed, and conveyances at common law, the decision of the court was sustainable, and for the various reasons explained in the former part of this argument. There are a number of cases in our own reports where patents and conveyances intended to secure lands to the inhabitants of towns or counties have been examined. Upon a careful examination of them none of them will be found to be in conflict with the doctrines contended for by us ; nor to sustain the notion that courts will uphold as a chancery trust a declaration of uses, or a trust where the trustee was appointed to do nothing ; or where he was not to convey the estate in fulfilment of the declaration. (*See Hornbeck* v. *Westbrook*, 9 *John.* 74. *Dutch Ch. Schenectady* v. *Vedder*, 4 *Wend.* 496. *Jackson, ex d. Hardenburg*, v. *Schoonmaker*, 2 *John.* 230.) The vice chancellor concludes thus : " The word use has no artificial meaning," for the statute executes trusts as well as uses. His error lies here. It is the substance of the declaration of the use, which determines whether it is an use executed or a chancery trust. It is not whether he employs the terms use, or trust, or confidence, or with the intent, &c.; for each of these phrases may or may not raise an use executed by the statute, or an executory trust, as has been shown before. When nothing is to be done by the trustee, they have a technical meaning to raise an use executed. The subject is very fully examined by Maddock, (1 *Mad. Ch.* 556 *to* 577,) where he reviews Lord Hardwicke's opinion in *Bagshaw* v. *Spencer*, Lord Mansfield's remarks upon it, and Mr. Fearne's observations on trusts executed and executory. The rule seems to be an inflexible one. Wherever there is nothing to be done by the trustee, the use is executed, whatever may have been the terms employed by the grantor, and however he may have supposed his grant would operate ; and this on reasons founded on public policy.

If such be the doctrine the courts have only to expound the law; to declare it. They will not speculate as to the better way for the grantor to have done. They simply declare the effect by the rules of law of what he did do; not frame a trust to suit their notions of what he meant to do.

*A. C. Paige,* for the respondent. The lease and release of N. Vander Volgen, to Joseph C. Yates and others, conveyed a valid trust estate to them in trust for the members of St. George's Lodge, in perpetuity, which will be supported in equity. The conveyance was by lease and release, by N. Vander Volgen to Robert Alexander and others in fee, upon trust, to the use of C. Van Dyke and others, members of St. George's Lodge, and all others *who then were,* or thereafter should become, members of the same, their survivors and successors forever. Under this conveyance the legal estate passed to the releasees, Alexander and others, in fee, who became trustees, seised of the premises, in trust for the members of St. George's Lodge, in perpetuity, for whose benefit the conveyance conveyed the equitable estate. A valid trust was created by this conveyance, in favor of the members of St. George's Lodge, which a court of equity will enforce. This was not a conveyance merely of a use to such of the members of St. George's Lodge as were specially named in the release, and for their joint lives only, which the statute of uses executed, to the exclusion of all the other present and future members of the lodge. But it was a trust not within the statute of uses, and unexecuted by it. The members of St. George's Lodge, by that description, could not be grantees in a common law conveyance, or as the cestuis que use in a conveyance under the statute of uses, not being a corporation, or persons certain; but they could by that description take a beneficial interest in a trust estate. (*Jackson* v. *Corey,* 8 *John.* 301.) A trust is a use not executed by the statute of uses; but it is what a use was before the statute of uses. (4 *Kent's Com.* 303, §61. *Cruise, tit.* 12 *Trust,* ch. 1, §2. 1 *Hil. Ab.* 201, §3. *Fisher* v. *Fields,* 10 *John.* 495.) Such uses as were not provided for by the statute of uses were left to their former operation. The provisions of the statute

were not deemed co-extensive with the various modes of cre-ating uses. (*Cruise, tit.* 12 *Trust, ch.* 1, § 2.) Uses not abolished by the statute of uses, continued to exist under the name of trusts; and were taken notice of and supported by the court of chancery under that name. (*Id.* § 1.) A cestui que use in esse is necessary to the execution of a use by the statute. If, therefore, a use is limited to a person not in esse, or uncertain, the statute has no operation. (*Cruise, tit.* 11 *Use, ch.* 3, § 29?) Contingent uses could be limited before as well as after, the statute of uses. (4 *Kent's Com.* 298, 290 to 301, § 61.) Thus a contingent remainder might be limited by way of use, to a person not ascertained, or not in esse; as, to the use of A. for life, remainder to his first and other sons in tail, A. at the time having no sons, (or remainder to the right heirs of J. S.; J. S. being living,) the contingent uses to the first and other sons of A. could not be executed, because the sons were not in esse. When A. had a son, a use vested in him, and the statute then transferred the legal estate to the use. Until such uses were executed they remained as they were before the statute. The possibility of entry in the feoffees to uses, was deemed sufficient to support the contingent uses when they came in esse. (*Cruise, tit. Remainder, ch.* 5, §§ 1 to 6. *Id. ib. ch.* 1, § 16. *Id. tit. Use, ch.* 4, § 3. *Coke Lit. H. & B. Notes, n.* 2, 31. *Chudleigh's case,* 1 *Coke R.* 100, 133. *Kent's Com.* 2, 41, § 59. *Shep. Touch.* 505, 6. 1 *Atk.* 593.) The counsel for the appellants contends that the grantor, by the conveyance in question, conveyed nothing but a life estate, to endure no longer than the life of the last survivor of the cestuis que use named in the deed; and that on his death the estate reverted to the devisees of the grantor. And he contends that the cestuis que use specially named, were alone able to take the use expressed; that the use was only for their lives, no terms having been employed to pass the inheritance to them; that the statute immediately executed the use; and that the remainder of the use resulted to the grantor, and by operation of the statute vested in him the reversion in fee, after the determination of the life estate of the cestuis que use. The fallacy of this argument consists in as-

Vander Volgen *v.* Yates.

suming that the use declared was only for life, and was confined to the cestuis que use specially named, and was executed by the statute of uses; and that the members of the lodge, other than those specially named in the deed, were incapable of taking any estate, legal or equitable, under the deed, for want of being described with sufficient certainty; whereas, we say, that the use declared in favor of the members of St. George's Lodge, was not a statute use, but a valid chancery trust, created in favor of all the then present members and the future members of the lodge, not executed by the statute; or, if executed, only executed as to the members of St. George's Lodge, as they from time to time came to be in esse.

The question whether parties take a trust estate, or a use executed by the statute, depends on intention. (4 *Taunt.* 774. *Co. Lit.* 290, *b*, *n.* 249, *sub.* 6.) The intent here was indisputably to give the use of these premises to the members of St. George's Lodge, in perpetuity. That could only be done by creating a trust in their favor. A conveyance to the members as such, would have been void for uncertainty. If to St. George's Lodge, it would have been void, because the lodge was not a corporation. To hold that the use declared by the conveyance was only for the life of the cestuis que use specially named, and that the statute executed the use, would defeat the intent of the parties, and the whole object of the purchase. Such a construction would deprive the purchasers of an estate of inheritance for which they paid a full consideration, and of the use and enjoyment of the premises before the dissolution of the lodge; until which time, at least, it was intended that the estate should continue in the members of the lodge. The general intention of the parties to the conveyance, being that the estate conveyed should belong to the members of St. George's Lodge in perpetuity, or as long as the lodge remained in existence, such a construction will be put upon the deed as will carry into effect this general intent. (*Jackson* v. *Beach*, 1 *John. C.* 399. *Jackson* v. *Myers*, 3 *John.* 388.) In *Gregory* v. *Henderson*, (4 *Taunt.* 772,) Gibbs, J. says: Where there is a devise to A. and his heirs, to the use of B. and his heirs, the court will not

Vander Volgen v. Yates.

hold it a use executed, unless it appears by the whole will that such was the testator's intent. (1 *Hil. Ab.* 203, §§ 12 to 14, 16, 19, 21, 22.   12 *Pick.* 152.   16 *Id.* 330, 327.   7 *T. R.* 552.) If a deed cannot operate in the manner intended by the parties, it will be construed to operate in some other manner. (*Cruise, tit. Deed, ch.* 23, §§ 17 *to* 23.   *Goodtitle* v. *Bailey, Cowp.* 597, *per Lord Mansfield.   Roe* v. *Tanner,* 2 *Will.* 77, *per Willes, Ch. J.*) By intent, is not meant the intent of parties to pass the land by this or that particular kind of deed, &c. but an intent that the lands shall pass at all events, one way or the other. This case shows how far courts carry the doctrine of bending the rigid rules of verbal construction, to carry into effect the manifest intent of the parties. (7 *Petersd. Ab.* 687, *Deeds, construction of,* 692.   *Cholmondeley* v. *Clinton,* 2 *B. & A.* 625; 2 *M. & S.* 363.   *Jackson* v. *Myers,* 3 *John.* 395.   *Jackson* v. *Beach,* 1 *John. Ca.* 399.   *Troop* v. *Blodgett,* 16 *John.* 172. *Cholmondeley* v. *Clinton,* 2 *Jac. & Walk.* 70, 79, 80, 81, 91 *to* 98, 100, 101, *per Sir Thomas Plumer, Master of Rolls. Parkhurst* v. *Smith, Willes,* 332, *per Lord Ch. J. Willes.*) The intent here was to pass the equitable estate to the members of St. George's Lodge, in perpetuity.   This intent can only be carried into effect by construing the estate created as being a chancery trust in the members of St. George's Lodge, and not a statute use.   And under the authority of the above cases, the court will therefore hold it a chancery trust.   The following rules of construction of deeds seem to require that the estate shall be deemed a trust, viz. The intention of the parties is to prevail; the construction is to be made on the entire deed; stress is not to be laid on the strict meaning of words; the construction is to be most strongly against grantor; if the deed will bear two constructions, the one favorable to law and justice is to be adopted; to effectuate the intent of the parties, mistakes will be corrected, and omissions supplied; and where a deed may enure in different ways, the grantee shall elect which way to take it. (*Cruise, tit. Deed, ch.* 23, §§ 1 *to* 25.)   See the cases stated in 7 *Petersd. Ab. pp.* 687 to 690, 692, showing how far courts go to give effect to the intent of the parties.

Vander Volgen *v.* Yates.

(1 *Inst.* 183, *a.*   *Id.* 42, *a.*   *Id.* 273, *b.*) It may be made a question, whether upon a bargain and sale for one year, and a release, (as in this case,) a statute use could be limited to any person other than the bargainee and releasee; and whether, upon such a conveyance, the legal estate does not vest in the grantee named therein, the lease and release being a single conveyance; (4 *Kent's Com.* 494;) upon the ground that being deemed a bargain and sale, the statute executes the use in the bargainee, and therefore cannot execute a second use in the cestuis que use named. And whether the interest of the cestuis que use in such a conveyance can be supported in any other way than as a chancery trust. This is the rule applied to a deed of bargain and sale. (2 *Bl. Com.* 335, 6, 7.) It was also applied in *Jackson* v. *Cary*, (16 *John.* 302,) to a bargain and sale for one year and a release The only distinction between that case and this, is that there the *habendum* clause stated that the premises were to be held to the use of the grantees or bargainees, in trust, &c. But the court, in their opinion in that case, relied upon no such distinction. If this rule applies to this case, then the legal estate vested in the grantees, one of whom (J. C. Yates,) was alive when the original bill was filed; and no use in the cestuis que use was executed, and no use resulted to the grantor.

Many adjudged cases can be referred to, to show that the conveyance of N. Vander Volgen created a valid chancery trust, in perpetuity, in favor of all the members of St. George's Lodge, present and future; and that the members of St. George's Lodge were capable, by that description, of taking an equitable estate, and that the legal estate was conveyed to, and vested in, the releasees as trustees, and was not, by the statute of uses, transferred to any use in the cestuis que use specially named, or to any supposed resulting use in the grantor. The use limited to the members of St. George's Lodge, is not void on the ground of uncertainty. For before and since the statute of uses, uses could be limited to persons not in esse, and uncertain. (*Chudleigh's case*, 1 *Coke's Rep.* 100 *to* 131.) The uses so limited, remained contingent until the cestuis que use came in

esse, and then were executed; or, they were sustained as trusts. (*Id.* 133.) In the conveyance in question, there is no greater uncertainty of description of the cestuis que use, than in the ordinary cases where the use was limited to the sons of *A.*, (A. at time having no sons,) or to the eight heirs of I. S. (I. S. being living.) In such cases the uses are valid. (*Cruise, tit. Remainder*, ch. 5, §§ 1 to 6. *Id. ch.* 1, § 16. *Cruise, tit. Use*, ch. 4, § 3. *Co. Lit. H. & B. n.* 231. 4 *Kent's Com.* 237 to 242, § 59. *Cornish on Uses*, 69, §§ 3, 132. 3 *Vol. Law Lib. Shep. Touch.* 505, 6.) In *Jackson* v. *Sisson*, (2 *John. Cas.* 321,) there was a patent of certain lands to A., B. & C., for themselves and their associates, being a settlement of Friends on the west side of Seneca lake; to have and to hold the same to A., B. & C., as tenants in common, for themselves and their associates, in fee. Kent, J. held that the associates, by this description, had an interest in equity, and that A., B. & C. were trustees for the association. In *Jackson* v. *Brooks*, (8 *Wend.* 426,) patent to R. and four others, in behalf of inhabitants of town of S., their associates, heirs, successors and assigns; and deed of confirmation to grantees in trust for themselves and the other inhabitants and freeholders of the town of S., their heirs and assigns forever. Savage, Ch. J. (*p.* 452,) regards the inhabitants, by this description, as having a valid trust estate in the lands. And the case necessarily adjudges it a valid trust, as it decides that the act of the legislature, transferring the trust estate to the city of Schenectady, passed the title both legal and equitable. (*S. C. decision affirmed in court of errors,* 15 *Wend.* 111.) In *Reformed Dutch Church, &c.* v. *Veeder*, (4 *Id.* 494,) where a grant was made to individuals for the use of a church, which at the time was not incorporated as such, held that the persons to whom the grant was made, stood seised to the use; and when the church afterwards acquired legal capacity to take and hold real estate, the statute executed the possession to the use, and the estate vested. In this case, Ch. J. Savage says: The patentees of the town of Schenectady held in trust for the town of Schenectady. That they held the legal estate. He thus affirms the validity of that trust; also, the validity of

Vander Volgen v. Yates.

the trust for the church of Schenectady, a body unincorporated,
and not capable of taking or holding the legal estate in real
property. This case is, in principle, precisely like the present
one. A limitation to the use of the poor of a parish, was held
good as a trust, though not as a use. (2 *Vern. R.* 387. *Gilb.
on Uses,* 44. *Attorney General* v. *Clark, Amb.* 422. *Jones* v.
*Williams, Id.* 651. 1 *Coke's Rep.* 25; *and cases cited as re-
ported by Benlowe.*) Feoffment by lord of manor to trustees
in trust that inhabitants of *A.* might forever have a school and
site of school house, was held valid as a trust. (*Attorney
General* v. *Hewer,* 2 *Vern. Rep.* 387.) Grant by dean and
chapter, &c. of a piece of ground to parishioners of St. Marga-
ret, &c. who afterwards erected a chapel thereon, held valid as
a trust. (*Herbert* v. *Dean & Chapter of Westminster,* 1 *Peere
Wms.* 773.) Grant to wife of J. S. (J. S. at the time having no
wife,) or to his first son, or second son, or to all his sons, or to
right heirs of J. S., (J. S. being living,) was held good by way
of contingent remainder, or contingent use. (*Shep. Touch.*
236. *Wells* v. *Fenton, Cro. Eliz.* 826.) Devise of a messu-
age to testator's wife and her heirs, on condition to convey same
in convenient time, &c. for establishment of a grammar school
forever; held that the condition was good as a charitable use;
and that for a breach, the heir might enter. (*Porter's case,*
1 *Coke's R.* 22, *b.*) In conveyances to uses, future limitations,
where no particular estate has been created, may be supported
either in the shape of remainders or springing uses. (1 *Saund.
on Uses & Trusts,* 136, 7. 1 *Atk.* 586. 2 *Salk.* 675.) If A.
make a feoffment in fee to the use of B. and his wife that shall
be, though the whole estate vest in B. at first, yet on his mar-
riage, his wife shall take jointly with him. (1 *Saund. on Uses
& Trusts,* 135, 6, *and cases there cited, viz. Dyer,* 274, 276.
1 *Coke,* 101, *a.* 13 *Id.* 57. *Mood.* 64. 2 *Bro. Ch. Cas.* 233.
*Wells* v. *Fenton, Cro. Eliz.* 826. *Woodliff* v. *Drury, Id.* 439.)
A use to a person uncertain, is not void in the first limitation,
but it is not executed until the person be in esse. (22 *Viner's
Ab. tit. Uses,* 247, 8, *E.* § 7.) If a use is limited to two jointly,
not in esse, and one comes to be in esse, he shall take the en-

tire use; yet if the other afterwards comes in esse, he sha ll take jointly with the former. (*Id.* 256, § 2.) In recommendatory trusts, in respect to certainty in description of objects or persons, it is not indispensable that the persons should be described by their names; but more general descriptions will amount to a sufficient designation of the person to take, as sons, children family relations, if the context fixes the particular persons who are to take, clearly and definitely. (2 *Story's Eq.* § 1071. 2 *Bro. Ch.* 38. 3 *Meriv.* 437. 1 *Pow. on Dev. by Jarman,* 274, *n. 7. Id.* 200, *n.* 3. *Jeremy's Eq. Jur. B.* 1, *ch.* 1, § 2, *p.* 100, 101. 17 *Ves.* 255; *S. C.* 19 *Id.* 301. 8 *Id.* 604. 9 *Id.* 319. 2 *Story's Eq.* § 1065.) In *Stubbs* v. *Largon,* (2 *Keene,* 255,) before Lord Langdale, in 1837, the testatrix gave certain leasehold premises to trustees in trust, after the decease of B. S., to dispose of and divide the same unto and amongst her partners, who should be in copartnership with her at the time of her decease, or to whom she might have disposed of her business, in such shares and proportions as her trustees should think fit ; held that this was a good devise to the persons, to whom it was *ascertained that the* testatrix had disposed of her business in her lifetime. Counsel for defendant objected that the devise was void for uncertainty ; the objects of the devise not being sufficiently defined. The master of the rolls says: "If the description be such as to distinguish the devisee from every other person, it is sufficient." His decision was afterwards affirmed by Lord Cottenham. (3 *Mylne & Craig,* 509.) The Lord Chancellor says: "Devisees may be ascertained not only by future natural events and contingencies, but by acts of third persons." (*See also Sandford* v. *Raikes,* 1 *Meri.* 653. *Clapton* v. *Bulmer,* 5 *Mylne & Craig,* 108 ; *S. C.* 10 *Sim.* 426.) Where the lord of the manor grants certain parcels of common to trustees for the benefit of themselves and the rest of the tenants of the manor, in lieu of their claims of common in the rest of the common lands in the manor, the whole interest passes from the lord, and there is no resulting trust for heirs as to the ownership of the soil. (*Irwin* v. *Simpson,* 7 *Bro. P. C.* 306. *Grovenor* v. *Hallum,* *Amb.* 643.) Devise of messuage

subject to annual payment of forty shillings to church wardens of two different parishes forever, to be laid out in repairing the testator's family vaults in each parish; held, that although church wardens could not take, yet the devise was good, and the heir at law was trustee. In *Attorney General* v. *Cook*, (2 *Ves. sen.* 273,) a devise of an annuity to a Baptist minister and his successor in office, was held valid. (*Attorney General* v. *Downing*, *Amb.* 550, 571. 1 *Dickens*, 414.) Devise to trustees, of an estate, upon trust with the rents to establish a college, and after the foundation and incorporation of the college, in trust for the collegiate body and their successors forever, held valid. A similar devise for building a hospital, &c. held valid by Lord Hardwicke, in *Addington* v. *Cann*, (3 *Atk.* 141.) Devise by testator, after death of his wife, to the principal, fellows and scholars of Jesus College, Oxford, and their successors, to find a scholar of his blood from time to time ; held good in equity. (*Floyd's case*, *Id.* 6. *Hob.* 136.) *Doe* v. *Copestake*, (6 *East*, 328, 1805.) Devise of land to trustees, their heirs or successors, in trust, to be applied by them and the officiating ministers, for the time being, of a Methodist congregation, as they shall, from time to time, think fit to apply the same; held not a devise to charitable uses within the act of 9 Geo. 2, c. 36, and that the trustees were entitled to recover the premises at law. (*Morice* v. *Bishop of Durham*, 1 *Ves. jun. N. S.* 399.) *Inglis* v. *Trustees of Sailors' Snug Harbor*, (3 *Peters*, 113.) Devise to chancellor of state of New-York, and recorder of city of New-York, &c. and their successors in office, in trust to erect an asylum for the purpose of maintaining aged and decrepit sailors, institution to be perpetual; held a valid devise to divest the heir of his legal estate, or at all events to affect the lands in his hands with the trust. If, in *Baptist Association* v. *Hart's Ex'rs*, (4 *Wheat.* 27,) the devise had been to a trustee capable of taking the legal estate, upon the same trusts, the devise would have been held valid. (3 *Pet.* 113.) *Coggeshal* v. *Pelton*, (7 *John. Ch.* 291.) Legacy of a sum of money to town of Rochelle, (not a corporation) for the purpose of erecting a town house for transacting town business, held valid as a charitable bequest.

*Potter* v. *Chapin*, (6 *Paige*, 649.) Held by the chancellor that chancery will sustain a gift, bequest or dedication of property to public or charitable uses, for the benefit of a community not incorporated; provided the same is consistent with local laws and public policy; and where the object of the gift or dedication is specific, and capable of being carried into effect, according to the intention of the donor. In *Witman* v. *Lex*, (17 *Serg. & Rawle*, 88,) held that a bequest to St. Michael and Zion churches in Philadelphia, the interest to be laid out in bread annually for ten years, for the poor of the Lutheran congregation, was a valid bequest. See *Com. Dig.* 269, *tit. Charitable Uses*, as to appointments to charitable uses. Some of the above English equity cases are bequests for charitable purposes. But I deem them applicable; because the court of chancery in England had original jurisdiction over bequests to charitable uses upon the doctrine of the common law, independent of the statute of 43 Eliz. called the statute of charitable uses. And the court of chancery in this state has the same jurisdiction, although the English statute of charitable uses has not been re-enacted here. (4 *Kent's Com.* 507, 8, § 68. 2. *Id.* 287, 288, *and note d*, § 33. *McCartee* v. *Orphan Asylum Society*, 9 *Cowen*, 464, 474, 475, 488, *per Chan. Jones*.) We have no statute like 9 Geo. 2, ch. 36, prohibiting or restricting devises to charitable uses, nor any statutes of mortmain. (9 *Cowen*, 451, 2.) Devises to charitable uses generally, by interposing a competent trustee, were valid at the common law. And the court of chancery, in analogy to other cases of trusts, held the feoffees to such uses accountable in equity for the due execution of them. (2 *Story's Eq.* §§ 1145; 1146. *Anon.* 1 *Ch. Cas.* 207. *Attorney Gen.* v. *Tancred*, 1 *W. Black.* 90.) The court of chancery exercises jurisdiction over charities, because they come under the head of trusts. (1 *Story's Eq.* § 1136.) If it were necessary, we could insist that the grant in this case to the members of St. George's Lodge was for a charitable purpose. The principal object of the order of freemasonry being, as appears from its history, the affording relief and assistance to the indiger members of the fraternity, and their families.

The validity of grants and devises to charitable uses, was only questioned at common law, where no trustee, capable of taking the legal estate at law, was interposed; as a grant or devise directly to a non-existing corporation, or to an unincorporated society. If the grant or devise was to a person having sufficient capacity to take as grantee, or devisee, in trust for, or to the use of, an unincorporated community, for a charitable purpose, or otherwise, consistent with local laws or public policy, such grant or devise was valid. (2 *Kent's Com.* 287, 8, *and notes,* § 33, 2d ed. 2 *Story's Eq.* §§ 1145, 6, 3d ed. 4 *Kent's Com.* 507, 8, 2d ed. § 68. 9 *Cowen,* 488, *opinion of Chan. Jones,*) This opinion was undisturbed by the decision in the court of errors. (2 *Kent's Com.* 288, *note a.* *Trustees of Baptist Asso.* v. *Smith,* 3 *Peters, App.* 484; *opinion of Story, J. p.* 497. 6 *East,* 328.) This principle was conceded on the argument in *Coggeshall* v. *Pelton,* 7 *John. Ch.* 293. 3 *Peters,* 113.) In the present case the grantees were persons capable of taking the legal estate.

The conveyance in question conveyed to all the members of St. George's Lodge, present and future, an equitable estate in perpetuity, by means of the terms, and other members of St. George's Lodge, and all others who then were, or thereafter should become members of the same, their survivors and successors forever. The use limited to the members of St. George's Lodge, not being a use executed by the statute, but a chancery trust, it is not subject to the rules which, before the statute, were applicable to conveyances of real estate; but being what a use was before the statute of uses, the same rules apply to it which were applied to uses before the statute. And chancery, in exercising its jurisdiction over trusts, is not bound by the technical rules of law, but may take a wider range in favor of the intent of the parties. Thus a trustee, or cestui que trust, will take a fee without the word 'heirs,' when a less estate will not satisfy the object of the trust. And chancery will, in such case, decree an execution of the trust in fee. (*Fisher* v. *Fields,* 10 *John.* 495, *and cases there cited.* *Id.* 505, 6, 7. *Jackson* v. *Myers,* 3 *Id.* 388, 396, 22 *Vin. Abr. tit. Uses,* O, (*S.*) § 3, *and*

*note to* § 3.   *Gilb. Law of Uses*, 17, 18.   *Cruise, tit.* 11, *Use,* *ch.* 2, § 26.   1 *Rep.* 87, *b*, 100, *b*.   1 *Hil. Abr.* 193, § 19.   4 *Kent's Com.* 303, 4, § 61.   *Bac. Abr. tit. Uses and Trusts, D.* 4, 5, *note*.   1 *Hil. Abr.* 204, § 25.)

No use or trust resulted to the grantor. But the whole legal estate passed to, and vested in the releasees in fee, in trust for the members of St. George's Lodge. And if the trust ever ceases, by the extinction of the lodge or otherwise, the premises will not revert to the heirs or devisees of the grantor. No trust can result to the grantor, against the intention of the parties, (2 *Paige's Ch. Rep.* 217;) nor in opposition to the express terms of the conveyance; especially where the conveyance is with warranty, as in this case; (1 *Id.* 494;) nor in opposition to the written agreement of the parties. (2 *Id.* 265. 6 *John. Ch.* 111. 5 *Paige,* 114. *Hawkins* v. *Chappel,* 1 *Atk.* 621.) The office of a resulting trust is to carry into effect the intention of the parties, not to defeat it. (2 *Paige* 265.) When the whole legal estate devised away, no trust will result to the grantor or to his neir. (*Hawkins* v. *Chappel,* 1 *Atk.* 521. 9 *Cowen,* 502, *per Chan. Jones*.) In the present case the whole legal estate was conveyed; and if a trust results, it will defeat the manifest intention of the parties. Where the whole legal interest is given for a particular purpose, with an intention to give to the devisee of the legal estate, the beneficial interest; if the whole is not exhausted by that particular purpose, the surplus goes to the devisee, and does not result. (*King* v. *Denison,* 1 *Ves. & B.* 272, 3. *Cruise, tit. Trust, ch.* 1, § 41. *Hill* v. *Bishop of London,* 1 *Atk.* 618.) Here the intent was to give the whole beneficial interest to the members of the lodge. Where there is any circumstance to show the intent of the parties to have been that the use should not result, it will remain in the persons in whom the legal estate is vested. (1 *Cruise, tit. Use, ch.* 4, § 38. *Dyer,* 166, *a*.) Where the contract is for the purchase of the absolute fee simple, the consideration extends to the entire use; and the payment of the consideration divests the grantor of any beneficial interest; and if any part of the use remains unlimited, it will vest in the purchaser. (1 *Saund.*

*on Uses and Trusts*, 105. *Pelly* v. *Madden*, 21 *Vin. Abr.* 498, *pl.* 15. 22 *Id.* 215, *Uses, O.* (*S.*) § 3 *and note.*) Here the absolute fee simple was purchased, and a money consideration paid therefor. If A. limits the whole fee simple of use out of land, and part thereof to a person uncertain, it shall never return to the feoffor by way of fraction of a use. (22 *Vin. Abr. Uses,* 279, § 10. *Bal. Read. on Stat. of Uses,* 350. *Cook* v. *Hutchinson,* 1 *Keen,* 43, *before Lord Langdale.*) When father conveyed to son, and declared the trusts, as to part, in favor of his wife and daughters, but not as to surplus; held that the surplus did not result to the grantor, but belonged to the son. The master of the rolls says that " to determine whether there is a resulting trust to the grantor, it is necessary to look carefully to the language of the deed, and to the circumstances of the particular case. A resulting trust cannot take effect, where a contrary intention, to be collected from the whole instrument, is indicated by the grantor." The intention of the grantor as indicated by him, in the conveyance in this case, was to convey an absolute fee simple to the grantees, in trust for the members of St. George's Lodge forever. He received a full consideration. He conveyed with warranty. He covenanted to make further conveyances to perfect the title. He parted with all his interest. The object of the conveyance was to furnish a site for a building, for the purposes of the lodge. The language of the deed, and the circumstances of the case, show that it was not the intent that any use or trust should result to the grantor. If a trust is held to result, it will defeat the intention of the parties, and the whole object of the purchase. And as the whole legal estate in fee was granted by the grantor for a full money consideration, if the trust ceases, the estate will, under the decisions in the foregoing cases, remain in fee in the grantees, or in the cestuis que use named in the deed, or in those who shall have come in esse. If the estate passed through the grantees, and vested in the cestuis que use specially named, they took for themselves, and in trust for the other present and future members of the lodge. And in that event the trust did not fail by the death

of the trustee; and chancery will appoint a trustee to uphold the trust.

This being a chancery trust, the court will so construe the conveyance creating it, or will so model it, as to carry into effect the manifest intent of the parties. Chancery, in exercising its jurisdiction over executory trusts, is not bound by the technical rules of law, but may take a wider range in favor of the intent of the parties. (*Fisher* v. *Fields*, 10 *John.* 495. 1 *Fonb. Eq.* 396, *note.* *Hopkins* v. *Same*, 1 *Atk.* 593. *Roe* v. *Tanner*, 2 *Wils.* 77. 1 *Saund. Uses & Trusts*, 122, 3. 1 *Coke*, 100, *b.* 4 *Kent's Com.* 303, § 61. *Cholmondeley* v. *Clinton*, 2 *Meri.* 173, 358. 2 *Jac. & Walk. S. C. pp.* 70, 79, 80, 81, 91 *to* 98, 100, 101, *per Sir Thomas Plumer, master of rolls.*) Uses executed, and mere trusts, stand on different foundations. (1 *Atk.* 593. *Shep. Touch.* 106, *note.* 2 *Story's Eq.* 1066.) Chancery can mould the terms of a deed or will creating a trust, so as to carry into effect the intention of the parties. (2 *Jac. & Walk., pages above referred to.*) Intention prevails against the legal import of words. (*Id.* 95.) Technical meaning and inference is controlled by the manifestation of a contrary intent. (*Id.* 101.) Courts of equity will supply omission of word 'heirs,' when intention so requires. (2 *Hil. Abr.* 3, § 12. 2 *Jac. & Wal.* 274. *Vin. tit. Grants*, 99, *R.* 12. *Cary's Rep.* 23, 29, *pl.* 8.) Where the words "shall stand and be seised" were omitted in a deed of settlement, chancery granted relief. (*Chan. R.* 162. *Thin* v. *Thin*, *Vin. Abr. tit. Grants*, 99, *R.* 11, 12.) Hardwicke, Ld. Chan. said, All trusts are executory, and the court must decree a conveyance, when asked at the proper time. (*Hopkins* v. *Same*, 1 *Atk.* 593.) They are construed liberally. (1 *Hil. Abr.* 202, §§ 6, 7. *Cruise, tit. Trust*, ch. 1, § 72.) A trust executed is now a legal estate. (*Id. per Ld. Hardwicke.*) Executory trusts in equity are susceptible of various modifications and constructions, not applicable to *executed* trusts. (1 *Story's Eq.* §§ 64 *to* 66. 1 *Fonb. Eq. B.* 1, ch. 3, § 1, *p.* 147, *note C.*) In executory trusts, the court must follow the intention of the parties, so far as the rules of law will admit, howsoever improperly or imperfectly the will or deed may be penned.

(1 *Atk.* 593.   2 *Meri.* 173, 358 ; .*S. C.* 2 *Jac. &· Walker*; *pp.*
. 70, 79, 80, 81, 91 *to* 98, 100, 101, *per Sir Thomas Plumer*.)

It does not follow, as contended by the complainant's
counsel, that a use must be executed by the statute, where the
trustee has no power of management or disposition.   Whether
the trustee, or cestui que trust shall take the legal estate, de-
pends upon the intention of the parties, or of the testator.
(1 *Hil. Abr.* 203, §§ 12, 13, 14.   12 *Pick.* 152.   16 *Id.* 330.)
The law vests the legal estate in the trustee, and gives the ces-
tui que trust an equitable interest, where this will best effect
the object in view ; as where provision is made for the separate
benefit of a married woman.   (1 *Hil. Abr.* 203, §§ 16, 18, 19.
*Cruise; ch.* 1, §§ 19 *to* 22.)   In such cases, the estate is held a
trust, and not an executed use.   (1 *Id.* §§ 21, 22.   16 *Pick.* 327.
7 *Term Rep.* 652.)   Contracts of purchase create a trust,
although the trustee has no power of management.   So a pur-
chase in the name of a stranger.   In these cases the legal estate
remains in the trustee.   So when the cestui que use is not in
esse, the legal estate continues in the trustee.   (*Cruise, tit.
Trust, ch.* 1, §§ 30, 31.   4 *Kent's Com.* 241, § 59.   1 *Saund.
Uses and Trusts,* 328.)   So expressly held in *Reformed Dutch
Church* v. *Veeder,* (4 *Wend.* 497.)

The covenant for further assurance, in the conveyance in
question, estops the devisees of the grantor from claiming a re-
sulting trust in the premises, or that the same have reverted
to them.   This covenant was inserted to remedy any possible
defect in the conveyance.   And a specific performance of it by
the representatives of the grantor may be compelled.   (3 *Law
Lib.   Platt on Cov.* 340, § 5, *and p.* 353.)   The complainants
are obligated in equity to make such further conveyances on
request, as are necessary to perfect the title in the members of
St. George's Lodge, in accordance with the original intent of
the parties.   The interest claimed in the premises by the com-
plainants, did not pass to them under the wills of Nicholas Van-
der Volgen and Peter Vander Volgen.   The testator was not
seised at the time of making his will, and did not die seised.
(*Cruise, tit.* 38, *ch.* 3, § 27.)   The will does not operate on

lands acquired after its execution. (*Ib.* § 38. 2 *Paige's Rep.* 358.) Here the whole fee was granted. If it subsequently revested, it was an estate acquired subsequent to the execution of the will. Like the case of an estate in terms absolutely devised, but which afterwards is found not to have been legally and effectually devised, (6 *Paige,* 600.) If the trust, on the death of J. C. Yates, did not devolve on the court of chancery, it vested in his legal representatives. (7 *Paige's Rep.* 107.) And the members of St. George's Lodge, and the legal representatives of J. C. Yates, have the same rights in the proceeds of the premises which they had therein before they were taken and appropriated by the U. & S. R. R. Company.

THE CHANCELLOR. It is not material in this case to inquire whether the legal title to the premises, at the time they were taken for the use of the rail-road, was in Joseph C. Yates, as the survivor of the parties of the second part in the deed of 1790, or in the heirs of L. Vrooman, who was named in such conveyance as one of the members of the lodge, as well as one of the parties of the second part. For if the legal title was in either, as a trustee for the members of the lodge, or for his or their own benefit, the complainants have no legal or equitable title to the fund in question, as the heirs or devisees of the grantor in that conveyance.

It is alleged, in the answer, that Joseph C. Yates, one of the grantees in the conveyance of 1790, was one of the members of the lodge, and continued so until his death. It is also probable that all the grantees were members, as well as the thirteen persons named in the deed as such. But as the answer is not responsive to the bill in this respect, and there is no proof of the fact, the court cannot act upon that presumption, in the decision of this case. It does appear, however, from the deed itself, that Lawrence Vrooman, one of the lessees of the term for a year, and one of the grantees to whom the reversion is conveyed in fee, by the deed of the 27th of April, 1790, was one of the thirteen members of the lodge specifically named in that deed. And as the conveyance is declared to be a trust

for the use of these thirteen members, and other persons who were then members of the lodge, as well as for the use of those who should thereafter become such members, it may legally be presumed that there were, at the time of the conveyance, other members of the lodge besides the thirteen persons whose names were mentioned in the deed. In determining the question whether the deed operated merely as a conveyance of the legal title of the lot, to the thirteen persons named in the conveyance, as being members, and to the survivors of them for life, only, as an executed use for their individual benefit merely, it must be remembered that the deed of the 27th of April, 1790, was not a mere common law release, of the reversion, to the lessees of the premises. But it was upon its face a deed of bargain and sale to the eight persons named therein as grantees and lessees in fee, and upon a consideration purporting to have been paid by them.

Taking the whole conveyance together it is perfectly evident that it could not have been the intention of the parties thereto to vest either the whole legal title, or the whole beneficial interest in the premises, in the thirteen persons therein specifically named as members of the lodge, during the terms of their respective lives, for their benefit and the benefit of the survivor of them, exclusively. On the contrary, the deed shows that it must have been the intention of the parties thereto that it should operate as a conveyance of the legal title of the whole fee of the lot, not for the sole benefit of the thirteen individuals named, for life, with a resulting use to the grantor, but for the benefit of the aggregate body of the members who then constituted, and who should thereafter constitute, the lodge or society of freemasons in Schenectady, called St. George's Lodge It is true, they could not, in that character, take the legal estate in the premises, as an executed use under the statute of uses; but they could take a beneficial interest in the property, as a charitable use.

It was not the intention of the framers of the statute of uses, to defeat and destroy the beneficial interest of the cestui que use, but only to change his mere equitable interest, in the use

of the property, into a legal estate, in the property itself, of the same quality and duration. Where the beneficial use, therefore, cannot take effect as a legal estate in the cestui que use, it will take effect as a trust, in the same manner as if the statute had not been passed; where it can take effect as a trust consistently with the rules of law. The authorities referred to by the vice chancellor, and by the counsel for the respondent, fully sustain this principle.

In the case under consideration, to give the whole title and beneficial interest in the premises to the thirteen members of the lodge specifically named in the deed, even for life, to the exclusion of others who then were, and those who might thereafter become members, would deprive such other members of the beneficial interests which the parties to the deed intended they should have, in the property, in common with the thirteen members named, or the survivors of them. And to limit the continuance of the legal title conveyed, by the lives of those thirteen persons, would not only deprive the surviving members of the lodge, and their successors, of the continuing benefit which the parties to the deed intended to secure to them, but would be wholly inconsistent with the previous grant in fee to Lawrence Vrooman, one of the thirteen, for a full consideration paid by him and the other seven grantees. The statute of uses, therefore, instead of vesting the legal estate in the thirteen for life, with remainder to the grantor as a resulting use, either vested the whole legal estate in fee in L. Vrooman and his heirs, in trust for himself and his associates, who then were or might thereafter become members of the lodge; or vested it in him and the other persons to whom the bargain and sale was made, and from whom, as the deed states, the consideration proceeded, and to the survivor of them, as trustees, in trust for the use and benefit of those who then were, and those who might thereafter become members of the lodge; as a charitable use. This last construction of the conveyance appears to be most consistent with the intention of the parties to the deed, and with the rules of law. And if the legal title to the premises in fee vested in the seven grantees, and the survivor of them, upon

such a trust, that legal title was in Joseph C. Yates, the surviving trustee, at the time of the commencement of this suit.

The complainants, therefore, were not entitled to the fund in the hands of the respondent, as his executrix; and the bill was properly dismissed by the vice chancellor. Even if there was any technical defect in the deed, so that it would not carry into effect the intention of the parties, the vice chancellor is unquestionably right in supposing the complainants could be compelled to supply such defect, by a further conveyance or assurance of the property. The decree appealed from must be affirmed with costs.

As the cestuis que trust were not parties to the suit, the vice chancellor could not properly make any order in this suit disposing of the fund in the hands of the respondent. But as the surviving trustee died subsequent to the revised statutes, the trust devolved upon the court of chancery. The new supreme court, therefore, is authorized to appoint a new trustee of the fund, which has now become a substitute for the land, so that it may be properly invested and applied for the use of those who may from time to time be the members of the lodge; as contemplated by the parties to the deed of April, 1790.